JOSEPH W. PALMER, Respondent, v. THE PENNSYLVANIA COMPANY, Appellant.

To render a railroad corporation liable for injuries to a passenger it is essential to show that the injury was caused by the neglect on its part to perform some duty which, in the exercise of reasonable care, prudence and diligence, it owed to the passenger.

Plaintiff while a passenger on defendant's road, in the night-time, slipped and fell from the platform of a car and was injured. In an action to recover damages there was evidence sufficient to justify a finding that there was a thin covering of snow upon the platform and some slight spots of ice around its edges, both of which had gathered during the trip. It had stormed during the night and the weather was cold and freezing. The platform was well constructed with proper and convenient steps, and with hand rails on either side. *Held,* the evidence failed to establish defendant's liability and a submission of the case to the jury was error.

In such a case the rule holding railroad corporations to the use of the utmost possible care in discovering defects in their tracks and running machinery does not apply. That rule regards simply such appliances as would be likely to occasion great danger and loss of life to the traveling public if defects existed therein.

*Weston* v. *N. Y. E. R. R. Co.* (73 N. Y. 595) distinguished.

A railroad corporation is not required to remove immediately and continuously snow and ice on the platforms of cars attached to a train traveling in the night during a continuous storm, or to cover them with sand or

ashes in such a manner that no slippery places shall be exposed. It can only be held responsible for dangers produced by the elements when they have assumed a dangerous form and it has had an opportunity to remove their effects.

It appeared that plaintiff was aware of the condition of the platform, having passed over it two or three times previous to the accident and having twice slipped thereon, and that he was walking upon it at the time without using the hand rails. *Held*, that if defendant was chargeable with negligence there was contributory negligence on the part of the plaintiff.

(Argued October 26, 1888; decided November 27, 1888.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made December 20, 1886, which affirmed a judgment in favor of plaintiff, entered upon a verdict and affirmed an order denying a motion for a new trial.

This action was brought to recover damages for injuries sustained by plaintiff from slipping and falling from the platform of a car on defendant's road.

The material facts are stated in the opinion.

*Homer A. Nelson* for appellant. Defendant, having stopped its train safely in a well-lighted station, and provided for plaintiff a platform to alight from, which was well constructed, furnished with suitable hand-rails, and, in all respects, similar to those in use on the best railroads, had done everything which a prudent and sensible person, in a similar situation, would have deemed adequate, in view of the circumstances and the danger to be anticipated, to prevent any injury which might reasonably be expected to occur. This is the full measure of the defendant's liability to the plaintiff. (*Dongan* v. *Champlain T. Co.*, 56 N. Y. 1; *Crocheron* v. *N. S. S. I. F. Co.*, Id. 656; *Cleveland* v. *N. J. S. Co.*, 68 id. 306; *Carpenter* v. *B. & A. R. R. Co.*, 24 Hun, 104–108; *Loftus* v. *U. F. Co.*, 84 N. Y. 455–460; *Putnam* v. *B. & S. A. R. R. Co.*, 55 id. 108–119; *Crafter* v. *M. R. Co.*, L. R., 1 C. P. 300; 2 Redfield on Railways,

201; *Moreland* v. *B. & P. R. R. Co.*, 1 N. E. Rep. [Mass.] 909 ) "It is not the duty of the railroad company to furnish some one to aid passengers in alighting from its cars. (*Lafflin* v. *B. & S. W. R. R. Co.*, 106 N. Y. 137.)

*Grant V. Taylor* for respondent.    Declarations of party in interest imputing to himself negligence, are not a. bar to his recovery. (*Dennison* v. *Miner*, Penn. Com. Pleas, 5 East. Rep. 219.) The jury having found as facts that the defendant was negligent, and the plaintiff was not; that the defendant had opportunities and time (five or six hours) to see the obstruction and abate it, their decision cannot be set aside, the evidence sustaining it fully, and it having been affirmed by the trial justice and General Term, the judgment cannot be reversed. (*Downs* v. *N. Y. C. R. R. Co.*, 47 N. Y. 88; *Kenney* v. *Cohoes*, 100 id. 623.) The judge properly charged that the duty defendant owes the public is the utmost possible care to anticipate future accident or disaster, and the utmost possible prudence in guarding against it, and he also charged every request made by defendant's counsel. (Angell's Law of Carriers, §§ 521–524, 568; *Hurlbut* v. *N. Y. C. R. R. Co.*, 40 N. Y. 145; *Weston* v. *N. Y. E. R. Co.*, 73 id. 595.) The degree of care was quite different from that imposed upon one who simply permits the public, by a bare license, to go upon his premises. (*Foster* v. *N. Y. C. & H. R. R. R. Co.*, 108 N. Y. 636; *Brassell* v. *N. Y. C. & H. R. R. R. Co.*, 84 id. 246; *C. C. C. & I. R. Co.* v. *Keary*, 3 O. S. 201; *Manville* v. *C. & Z. R. Co.*, 2 West. L. M. [Ohio] 495.) Where carriers undertake to convey passengers by the powerful and dangerous agency of steam, public policy and safety require that they should be held to the greatest possible care and diligence. Any neglect in such case may deserve the epithet of gross. (*Phila. & Read. R. R. Co.* v. *Derby*, 14 How. [U. S.] 486; *New World* v. *King*, 16 id. 451; *Eagle Packet Co.* v. *Defries*, 34 Am. R. 245.) The plaintiff was entitled to a safe passage out of the car so that he could continue his journey to the place of destination, and he had a right to

act upon the assumption that every necessary and reasonable precaution would be taken by its proprietors to make it so. (*Foster* v. *N. Y. C. & H. R. R. R. Co.*, 108 N. Y., 636; *Archer* v. *N. Y. & N. H. R. R. Co.*, 106 id. 595; *Dobiechi* v. *Sharp*, 88 id. 203.) The court correctly charged: "The plaintiff had his leg broken, and his pain and suffering, the doctor's bill, and all the other expenses which necessarily resulted from the accident, enter into the question of damages, which are to be assessed by you in case you find for the plaintiff. As a matter of course, it must be simple compensation." (*Clapp* v. *H. R. R. Co.*, 19 Barb. 461.)

Ruger, Ch. J. The evidence was quite conflicting as to the presence of any ice on the platform of the car from which the plaintiff fell and broke his leg, and as to the quantity of snow lying thereon; some of the witnesses stating that there was no ice and only so much snow as had apparently been blown in and gathered around the corners and crevices of the platform; and others saying there was some ice formed on the edges of the platform from sleet, hail or rain freezing there, and being thinly covered with a coating of snow. It had stormed at various times during the night and morning, and the weather was cold and freezing. Whatever may have been the testimony it is quite certain that the quantity of either ice or snow, was quite inconsiderable, and perceptible only after some inspection. It also appeared that, such as it was, it had been formed upon the platform of a passenger car attached to a though train running from Chicago to Fort Wayne in the course of its transit between those places. The plaintiff had taken his passage at Chicago for a place beyond Fort Wayne, and had been upon the cars about twelve hours, when about five A. M. they arrived at Mansfield, in the state of Ohio, where the accident occurred.

The jury were undoubtedly authorized to find from the evidence, that there was some snow upon the car platform and some slight spots of ice around its edges, and that the accident was occasioned by the slipping of the defendant on the platform by reason of such ice or snow. There is no claim that

there were hummocks or bunches of either substance, or that it lay in any other form than as a thin covering upon the platform.

It was also established by the evidence of the plaintiff that he was aware of the condition of the platform at the time of the accident, as he had two or three times during the night crossed over it and observed that it was slippery.

The amount of the verdict rendered in the case is quite reasonable, and as the plaintiff was undoubtedly seriously injured, and was subjected to damage by reason thereof, we should be quite willing to affirm the judgment if it could be done without violating legal principles.

Railroad corporations, however, are not the insurers of the lives or safety of passengers upon their cars, and in order to render them so, it is essential to show that they have neglected the performance of some duty, which, in the exercise of reasonable care, prudence and diligence, they owe to such passengers.

We think the trial court was not justified in applying to this case the rule pertaining to the construction and maintenance of tracks and running machinery by railroad corporations, which holds them to the use of the utmost possible care in discovering and remedying defects therein. That rule is applicable to such appliances of a railroad as would be likely to occasion great danger and loss of life to the traveling public, if defects existed therein on account of the velocity with which cars are moved, and the destructive and irresistible force which accompanies such motion.

No claim is made here but that the road-bed was in good order; the cars constructed upon the usual and customary plan, and provided with all of the conveniences and appliances ordinarily used to afford safety and comfort to their occupants. It had a safe and well-constructed platform, with proper and convenient steps to enable passengers to safely enter or alight therefrom, and hand rails on either side to afford assistance in case of any insecurity in the footing of the passageway. The accident occurred from a cause which is as

common to all other exposed places, as to that of a car platform, and which is inseparable from the nature of a northern climate.

Persons who suppose that they are freed from the exercise of reasonable care and prudence in passing over places exposed to ice and snow in such a climate as ours, upon the assumption that a duty belongs to some other person to keep such place, under all circumstances, absolutely free therefrom, greatly mistake the legal obligations resting upon the parties respectively interested.

The rule laid down by the trial court in *Weston* v. *New York Elevated Railroad Company*, as approved in 73 New York, 595, in reference to a permanent platform at an elevated railroad station in the city of New York, was that " the defendant was not bound to keep its platform in such a condition that it would have been impossible for any passenger to slip, but in such a condition that a person using ordinary care, which people use when not apprised of danger, would not slip." This was applied in a case where the snow had fallen long before the accident, and an effort had been made by the railroad company to remove it, but it had imperfectly peformed that duty. We think even such a rule is not applicable to the removal of snow and ice on cars attached to a railroad train in course of transit, traveling in the night, during a continuous storm. The immediate and continuous removal of all snow and ice from such trains, or the covering of them with sand or ashes in such manner that no slippery places shall be at any time exposed, would be quite impracticable and beyond the duty which a railroad company owes to its passengers. The presence of snow or ice upon exposed places on moving cars is an accident of the hour, and no ordinary diligence could, during the prevalence of a storm, wholly remove its effects from the places exposed to its action, so as to prevent accidents to heedless and inattentive travelers. A passenger on a railroad train has no right to assume that the effects of a continuous storm of snow, sleet, rain or hail will be immediately and effectually removed from the exposed platform of the car

while making its passage between stations, or the termini of its route, and it would be an obligation beyond a reasonable expectation of performance to require a railroad corporation to do so.

We are not referred to any case laying down the precise degree of care and diligence required of such corporations under such circumstances, but we think it must be somewhat analogous to that imposed upon municipal corporations, in respect to the removal of snow and ice from public streets. Those corporations are required to remove dangerous accumulations of snow or ice in a street or public place within a reasonable. time after they have occurred; but they are not to be deemed negligent if they do not remove all traces of such obstructions, when they do not constitute something more than the presence of a danger, arising alone from their inherent quality of being slippery. (*Taylor* v. *Yonkers*, 105 N. Y. 202; *Kinney* v. *City of Troy*, 108 N. Y., 570; *Kaveny* v. *City of Troy*, Id. 572.)

The theory upon which the learned trial judge denied the motion for a nonsuit in this case is undoubtedly expressed in his charge to the jury, in which he says: "If you will pay attention you will understand the enormous responsibility which such a company assumes. The duty it owes the public is the *utmost possible care* to anticipate future accident or disaster, and the *utmost possible prudence* in guarding against it."

Although this portion of the charge was unexcepted to by the defendant, and is, therefore, unavailable to it as an error of law upon this appeal, it may yet be taken as an expression of the views entertained by the court in respect to the law, in refusing to grant the motion to nonsuit presented by the defendant.

It is quite impossible to lay down any general rule applicable to all circumstances, in respect to the degree of care to be observed by a railroad corporation in the removal of ice or snow from its cars, and each case must, therefore, be generally determined by its own peculiar circumstances; but

it is safe to say that such corporations should not be held responsible for the dangers produced by the elements until they have assumed a dangerous form, and they have had a reasonable opportunity to remove their effects.

Having arrived at the conclusion that the case presented no facts as to the negligence of the defendant which a jury were justified in regarding as proof of negligence, we deem it unnecessary to discuss at length the question of the alleged contributory negligence of the plaintiff. A problem not free from doubt is presented by a verdict, adjudging the defendant guilty of negligence in not observing the danger arising from the presence of snow and ice upon a platform, and yet exonerating the plaintiff from the imputation of contributory negligence in view of the fact that he knew that ice and snow had accumulated on the platform; that he had twice slipped there the same night, and thereafter walked fearlessly over it without availing himself of the protection of hand rails within his reach on both sides of the platform. The same duty which rested upon the defendant to see and remove this obstruction rested upon the plaintiff, with still greater force, to guard himself from injury while passing over it, because he had been informed by experience of its presence and danger, and as the storm continued until the train reached Mansfield, he should have known, that no reasonable opportunity had been afforded the railroad company to effectually remove it.

The judgments of the courts below should, therefore, be reversed, and a new trial ordered, with cost to abide the event.

All concur.

Judgment reversed.