ELLEN A. KELLY, as Administratrix, etc., Respondent, v. THE
MANHATTAN RAILWAY COMPANY, Appellant.

D., plaintiff's intestate, in descending the stairway of a station on defend--
ant's road, fell and was injured.  The accident happened about half past
five o'clock A. M.   There had been a storm of sleet and snow during the-
night, commencing near midnight and continuing until about four A. M.
The stairway was covered, the roof projecting a foot each side, it was
provided with hand rails and was inclosed at the sides up to the-
rails; upon each step were pieces of rubber to prevent slipping.   In an
action to recover damages the court denied a motion for a nonsuit and
charged the jury, in substance, that it was the legal duty of defendant
to use all human care, caution and skill to make the ingress and egress-
to its station safe; also, that defendant was required to use all the skill,
diligence and care a very cautious human being would use if he were-
looking after his own life and health; also, that if they came to the con-
clusion that the steps were slippery at the time, and that means might
have been taken to prevent them being so, and, if, by reason of their
slipperiness, the deceased fell, defendant was chargeable with neglig-
ence.   *Held*, error; that, as relates to the approaches to its cars, a less-
degree of care was required of a railroad company than that required
in regard to the road-bed, machinery and construction of its cars, or-
where a defect in any of the appliances would be likely to occasion great
danger and loss of life to travelers, and the corporation was bound
simply to exercise ordinary care in view of the dangers to be appre--
hended; that it could not properly be charged with negligence for a.
failure to throw on the steps ashes, sawdust, or something of that char-
acter during the storm, or between the time of its stopping and the hap-
pening of the accident; and that, therefore, the motion for a nonsuit.
should have been granted.

(Argued January 17, 1889; decided March, 5, 1889.)

APPEAL from judgment of the General Term of the Superior
Court of the city of New York, entered upon an order made
June 29, 1887, which affirmed a judgment in favor of plaintiff
entered upon a verdict.

The action was brought to recover damages for an accident
resulting in the death of the plaintiff's decedent, alleged to
have been caused by defendant's negligence.

The evidence on the part of the plaintiff tended to show the
following facts : The deceased, in company with his brother-

in-law, left the saloon, kept by the latter on the south-west corner of Thirty-fourth street and First avenue in the city of New York, about twelve o'clock at night on the 16th of January, 1886, and walked to a saloon kept by a friend, where they remained until between three and four o'clock. During nearly all the time they were in the latter place the deceased was asleep, and his companions were playing cards. Between three and four o'clock in the morning they left the saloon and took a train on the elevated road at Thirty-fourth street and went to the One Hundred and Sixteenth street station, where they arrived about half past five in the morning. Where they went and what they were doing between the time they left the saloon of their friend and the time they arrived at the Thirty-fourth street station does not very clearly appear. The night in question, as testified to by the friend of the deceased, was quite cold, and from before twelve until between three and four o'clock in the morning it was snowing, or, in his language, "it was sleet, not extra hard; it was a mixture of snow and hail;" and to avoid the snow and hail they passed the time in the saloon until the hour mentioned, which was Sunday morning. It was quite dangerous walking along the sidewalks, the snow and hail making it very slippery, and it was freezing considerably. The deceased and his companion got out at the One Hundred and Sixteenth street station and went down the stairs leading to the street. When on the third step from the bottom the deceased fell and sustained a fracture of the leg, called by the surgeon a "Potts" fracture. He was a large man, weighing about two hundred and twenty-five pounds, and, after the accident, was taken to the hospital, where he remained until Wednesday morning. Delirium having, in the meantime, set in, he was removed to Bellevue Hospital, where he died the same day. The surgeon in charge of the hospital where he was first taken stated that the delirium was, as he thought, what is known as traumatic delirium, which, he stated, is indistinguishable from delirium tremens, and there was evidence given on the part of defendant tending to show that the deceased, before the accident, had been drinking very

freely, and that the delirium from which he died was delirium tremens.

The brother-in-law of the deceased testified that the steps leading from the train to the street below were very slippery at the time of the accident, and that there was no evidence of any ashes or sawdust, or anything of that nature, having been spread upon them to prevent people from slipping, nor was there any evidence of any attempt at removing the substance, whatever it was, which had accumulated upon the steps. The steps were inclosed the height of a hand-rail, and from the hand-rail to the roof they were open. They were covered with a roof, which projected about a foot on each side of the stairway, and the hand-rail on each side could be easily grasped to aid in ascending or descending the stairs. At the end of all the evidence in the case there was a motion for a nonsuit, upon the ground, among others, that there was no evidence of negligence on the part of the defendant, which was denied, and counsel for the defendant excepted. The learned judge, in his charge to the jury, said, among other things, that in this case " the legal duty of the defendant was to use all human care, caution and skill to make their (passengers) ingress and egress from the station safe. They are not called upon by the law to guarantee perfect safety, but they are required to use all the skill, all the diligence, all the care that the most cautious human being would use if he were looking after the protection of his own life and health." Upon exception, the latter part of the charge was modified by the court, by saying, " a very cautious," instead of the words, " the most cautious " human being would exercise. And as modified, counsel for the defendant duly excepted to it. In speaking of the condition of the stairway or steps at the place of accident, the learned judge also said : " If you come to the conclusion that they were slippery at that time, and that means might have been taken to prevent them from being so, and that by reason of their slipperiness the plaintiff fell, as has been stated, then, gentlemen, so far as this issue goes, you will be justified in finding for the plaintiff ; " to which por-

tion of the charge exception was duly taken by defendant's counsel. In response to a request to charge, on the part of the defendant, the court again said: " I hold, that in the case of the defendant, it is bound to use the utmost care in keeping its steps free from slipperiness, and free from danger on that account, as long as, and while it is carrying passengers, who, in their ingress and egress from the station are obliged to use those steps, and that in the case now before the court there is no evidence of any instantaneous or recent cause of slipperiness, which would render the charge as requested necessary." An exception was, duly taken to the charge as given.

*Howard Townsend* for appellant. In circumstances attended with only ordinary danger, carriers are required to use only ordinary care. (*Unger* v. *F. S., etc., R. R. Co.*, 51 N. Y. 497, 501; *Hegeman* v. *W. R. R. Corp.*, 13 id. 9; *Ingalls* v. *Bills*, 9 Metc. 1; *Deyo* v. *N. Y. C. R. R. Co.*, 34 N. Y. 9, 11; *Caldwell* v. *N. J. S. Co.*, 47 id. 282, 288; *Dongan* v. *C. T. Co.*, 56 id. 1, 7; *Morris* v. *N. Y. C., etc., R. R. Co.*, 106 id. 678, 679; *Kelly* v. *N. Y. & S. B. R. Co.*, 109 id. 44.) The use of railway platforms and their approaches is attended only with ordinary dangers and requires only ordinary care. (*Lafflin* v. *B. & S. R. R. Co.*, 106 N. Y. 136; *Bateman* v. *N. Y. C., etc., R. R. Co.*, 14 N. Y. State Rep. 454; *Morris* v. *N. Y. C. & H. R. R. R. Co.*, 106 N. Y. 678; *Weston* v. *N. Y. E. R. R. Co.*, 73 id. 595; *Kelly* v. *N. Y. & S. B. R. Co.*, 109 id. 44; *Moreland* v. *B. & P. R. R. Co.*, 141 Mass. 31; *Penn. Co.* v. *Marion*, 104 Ind. 239, 242; *P. F. W., etc., R. R. Co.* v. *Brigham*, 29 Ohio St. 374; Thompson on Carriers of Passengers, 104; *Carpenter* v. *B. & A. R. R. Co.*, 97 N. Y. 494; Rorer on Railroads, 476; *Beard* v. *C., etc., R. R. Co.*, 48 Vt. 101; *McKone* v. *M. C. R. R. Co.*, 51 Mich. 601; *S. L., etc., R. Co.* v. *Fairbairn*, 4 S. W. R. 50; *Moore* v. *W., etc. R. R. Co.*, 84 Mo. 481; *Moses* v. *L., etc., R. Co.*, 2 State Rep. 567; *Cross* v. *L. S., etc., R. R. Co.*, 37 N. W. Rep. 361; *Benner*

*man* v. *S. P.*, etc., *R. R. Co.*, 32 Minn. 340; *Foulkes* v. *M. R. Co.*, L. R., 4 C. P. D. 267; *Longmore* v. *G. W. R. Co.*, 15 Eng. Com. L. 183.) In the actual transportation of passengers only the exercise of such care, diligence and skill as a highly intelligent and skillful man would deem adapted to guard against such dangers as human foresight could anticipate is required. (S. & R. on Negligence, § 266.) It was error to charge that if the steps were slippery, and if means might have been taken to prevent them from being so, the defendant was negligent. (*Lafflin* v. *B. S. R. R. Co.*, 106 N. Y. 136; *Loftus* v. *U. F. Co.*, 84 id. 455; *Dongan* v. *C. T. Co.*, 56 id. 1; *Taylor* v. *City of Yonkers*, 105 id. 202; *Burke* v. *Wittherbee*, 98 id. 562; *C. S. L.*, etc., *R. R. Co.* v. *Trotter*, 61 Miss. 417; Story on Bailments, § 601.) The duty of the defendant towards its passengers in respect to the means of egress from and ingress to its trains was to exercise ordinary care, to make them reasonably safe and adequate for the purposes for which they were employed. (*Lafflin* v. *B. & S. R. R. Co.*, 106 N. Y. 136; *Bateman* v. *N. Y. C. & H. R. R. R. Co.*, 14 N. Y. State Rep. 454; *Taylor* v. *City of Yonkers*, 105 N. Y. 202; *Larkin* v. *O'Niel*, 48 Hun, 591; *Henkel* v. *Murr*, 31 id. 28; *Weston* v. *N. Y. E. R. R. Co.*, 73 N. Y. 595; *Shepperd* v. *M. R. Co.*, 20 Week. Rep. 705; *Evers* v. *H. R. B. Co.*, 18 Hun, 144; *Landolt* v. *City of Norwich*, 37 Conn. 615; *Stanton* v. *City of Springfield*, 12 Allen, 566; *Billings* v. *City of Worcester*, 102 Mass. 329; *Todd* v. *City of Troy*, 61 N. Y. 506; *Evans* v. *City of Utica*, 69 id. 166.) As the evidence did not warrant a verdict against the defendant, the proper course was to dismiss the complaint. (*Steves* v. *O.*, etc., *R. R. Co.*, 18 N. Y. 422; *Wilds* v. *H. R. R. Co.*, 24 id. 430; *Deyo* v. *N. Y. C. R. R. Co.*, 34 id. 9.) The learned trial judge erred in not charging the jury, at defendant's request, that in order to make the defendant liable the slippery condition of the steps must have continued for such a length of time as to charge the defendant with notice of their condition. (*Carpenter* v. *B. & A. R. R. Co.*, 97 N. Y. 494; *Morris* v.

*N. Y. C., etc., R. R. Co.*, 106 id. 678; *Kelly v. N. Y. &* *S. B. R. R. Co.*, 14 N. Y. S. R. 36; *Shepperd v. M. R. R. Co.*, 20 Week. Rep. 705; *Evers v. H. R. B. Co.*, 18 Hun, 144.) When an instruction is asked upon a supposed state of facts, the instruction should be given if the evidence is sufficient to support a finding of those facts by the jury. (*Griel v. Marks*, 51 Ala. 566; *State v. Gibbons*, 10 La. 117; *C., etc., R. R. Co. v. Bingenheimer*, 116 Ill. 226. *Kendall v. Brown*, 75 id. 232; *P., etc., Ins. Co. v. Anapow*, 45 id. 87; *Flournoy v. Andrews*, 5 Mo. 513.) In order to warrant a finding that negligence or an act not amounting to a wanton wrong is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances. (*Scheffer v. R. R. Co.*, 105 U. S. 249; *R. R. Co. v. Kellogg*, 94 id. 469; *Lowery v. W. U. T. Co.*, 60 N. Y. 198, 201; *Rigley v. Hewitt*, 5 Exch. 240; *Loftus v. U. F. Co.*, 84 N. Y. 455; *Carpenter v. B. & A. R. R. Co.*, 97 id. 494; *Lilly v. N. Y. C. & H. R. R. R. Co.*, 107 id. 566; *Fent v. T., etc., R. R. Co.*, 59 Ill. 349; *Hoag v. L. S., etc., R. R. Co.*, 85 Penn. St. 293; *Derry v. Flitner*, 118 Mass. 131; *Atkinson v. G. T. Co.*, 60 Wis. 141; *Seale v. G. C. & S. T. R. Co.*, 65 Tex. 274; *D. L. & W. R. R. Co. v. Salmon*, 39 N. J. L. 311; *McDonald v. Snelling*, 14 Ald. 290; *Lewis v. F., etc., R. Co.*, 54 Mich. 55; *Nelson v. C. M. & S. P. R. Co.*, 30 Minn. 74; *Campbell v. City of Stillwater*, 32 id. 308; *McGrew v. Stone*, 53 Penn. St. 436; *West Mahanoy v. Watson*, 112 id. 574; *Daniels v. Ballantine*, 23 Ohio St. 532; *Brown v. W., etc., R. Co.*, 20 Mo. App. 222; *Lynch v. Knight*, 9 H. of L. Cas. 577; *Sharp v. Powell*, L. R., 7 C. P. 253; Wharton on Neg. § 74; 2 Parsons on Cont. 456.)

*Henry H. Spelman* for respondent. In an action to recover damages arising from negligence the court ought not to nonsuit the plaintiff where either the facts of the case or the inference from them is in any degree doubtful. (*McGrath v. H. R. R.*

R. Co., 19 How. 211; Sheridan v. B. C. & N. R. R. Co., 36 N. Y. 39; Gonzales v. N. Y. & H. R. R. Co., 39 How. 407; Thompson v. Lumley, 50 id. 105; Heyne v. Blair, 62 N. Y. 23; Putnam v. B. & S. A. R. R. Co., 55 id. 112.) There was abundant evidence of defendant's negligence in not sanding its steps when slippery; and there is evidence of the deceased's freedom from negligence. (Putnam v. B. & S. A. R. R. Co., 55 N. Y. 112; Bills v. N. Y. C. R. R. Co., 84 id. 10; Willis v. L. I. R. R. Co., 34 id. 679.) The court is not bound to take the good part of the requests to charge from the bad parts. (Hamilton v. Eno, 81 N. Y. 127.) The jury having been properly instructed upon every question material to the disposition of the cause, the judge properly declined to make additional charges. (Moody v. Osgood, 54 N. Y. 488.) As the evidence showed the storm had ceased some hours before the accident occurred, it was for the jury to determine whether the defendant had had ample time to discover the slippery condition of the steps and to provide against accidents. (Wilcox S. P. Co. v. Green, 72 N. Y. 17; 9 Hun, 347.) The charge was correct that the defendant was bound to use all human care, caution and skill to provide safe ingress and egress, and to use all care and diligence that a very cautious human being would exercise. (Weston v. N. Y. El. R. R. Co., 42 J. & S. 156; 75 N. Y. 595; Hurlbert v. N. Y. C. R. R. Co., 40 id. 150, 151.) The jury were to determine whether or not the injury received through defendant's negligence was the cause of death. (Kellogg v. M. & S. P. R. R. Co., 94 U. S. 469; Bills v. N. Y. C. R. R. Co. 84 N. Y. 10.) That portion of the charge is correct which states that, if the steps were slippery and means might have been taken to prevent them from being so, and that by reason of their slipperiness the plaintiff's intestate fell, as has been stated, then, so far as that issue goes, the jury would be justified in finding for the plaintiff. (Brown v. N. Y. C. R. R. Co., 34 N. Y. 404; Brassell v. N. Y. C. & H. R. R. R. Co., 84 id. 241; Gaynor v. O. C., etc., R. R. Co., 100 Mass. 208;

2 S. & R. on Neg. [4th ed.] § 10, note, § 507; *Warren* v. *F. R. R. Co.*, 8 Allen, 227.)

Peckham, J. The rule in relation to the liability of railroad corporations for injuries sustained by passengers under such circumstances as this case develops, differs from that which obtains in the case of an injury to a passenger while he is being carried over the road of the corporation and where the injury occurs from a defect in the road-bed, or machinery or in the construction of the cars, or where it results from a defect in any of the appliances such as would be likely to occasion great danger and loss of life to those traveling on the road. The rule in the latter case requires from the carrier of passengers the exercise of the utmost care, so far as human skill and foresight can go, for the reason that a neglect of duty in such a case is likely to result in great bodily harm and sometimes death to those who are compelled to use that means of conveyance. As the result of the least negligence may be of so fatal a nature, the duty of vigilance, on the part of the carrier, requires the exercise of that amount of care and skill in order to prevent accident. (*Hegeman* v. *Western R. R. Co.*, 13 N. Y. 9.) But in the approaches to the cars, such as platforms, halls, stairways and the like, a less degree of care is required, and for the reason that the consequences of a neglect of the highest skill and care which human foresight can attain to are naturally of a much less serious nature. The rule in such cases is that the carrier is bound simply to exercise ordinary care in view of the dangers to be apprehended.

We have lately had cases of this character before us, and in the case of *Lafflin* v. *B. & S. W. R. R. Co.* (106 N. Y. 136), where a passenger was injured in stepping from a car to the platform, because, as he alleged, the platform was too far from the steps of the car, this rule was announced (opinion per Earl, J.): "The company was not bound so to construct this platform as to make accidents to passengers using the same, impossible, or to use the highest degree of diligence to make it safe, convenient and useful. It was bound simply

to exercise ordinary care, in view of the dangers attending its use, to make it reasonably adequate for the purpose to which it was devoted."

In *Morris* v. *New York Central and Hudson River Railroad Company* (106 N. Y. 678) a passenger was injured by the falling upon him of a clothes-wringer placed in a rack over his seat by another passenger; and the court held the measure of care required of a carrier of passengers in such a case was not the highest care which human vigilance could give, but that the company was only to be held to reasonable care, to be measured by the circumstances surrounding the case. In *Palmer* v. *Pennsylvania Company* (111 N. Y. 488) it was held that the rule requiring the utmost possible care in discovering defects in the trucks and running machinery of a road did not apply where a passenger was injured by slipping on the platform of a car which had become slippery on its passage during the night because of a storm which was raging during that time. It was said, in that case, by RUGER, Ch. J., that "the trial court was not justified in applying to this case the rule pertaining to the construction and maintenance of tracks and running machinery by railroad corporations, which holds them to the use of the utmost possible care in discovering and remedying defects therein. That rule is applicable to such appliances of a railroad as would be likely to occasion great danger and loss of life to the traveling public, if defects existed therein on account of the velocity with which cars are moved, and the destructive and irresistible force which accompanies such motion." And, again, the learned judge said: "The presence of snow or ice upon exposed places on moving cars is an accident of the hour, and no ordinary diligence could, during the prevalence of a storm, wholly remove its effects from the places exposed to its action, so as to prevent accidents to heedless and inattentive travelers. A passenger on a railroad train has no right to assume that the effects of a continuous storm of snow, sleet, rain or hail will be immediately and effectually removed from the exposed platform of the car while making its passage between stations or the termini of its route, and it

would be an obligation beyond a reasonable expectation of performance to require a railroad corporation to do so." (See, also, *Unger* v. *Forty-second St. R. R. Co.*, 51 N. Y. 497.)

In applying this rule of reduced liability to the case in hand we are unable to see, from the evidence on the part of the plaintiff, that the defendant was guilty of such negligence as would permit the recovery of a judgment for the injury sustained by the deceased. The night was cold and stormy. Snow fell mixed with sleet, and the sidewalks were rendered very slippery. This the deceased knew, for he walked upon them from the saloon to the Thirty-fourth street station. The storm commenced about midnight and continued until nearly four o'clock in the morning, and this accident happened between half past five and six o'clock. The defendant had furnished a covered stairway with hand-rails and pieces of rubber on each step to prevent slipping, and the failure to throw ashes or sawdust or something of that character upon the steps during the storm cannot be regarded as negligence, because the continuance of the storm would soon render the steps as slippery as before; and it seems to us that culpable negligence cannot be predicated upon the failure to clean off the steps between the time the storm ceased, which was between three and four o'clock in the morning, and the time when the accident happened. So brief a period as that, at such a time in the night, cannot, we think, be regarded as any evidence of a lack of that reasonable care which the defendant was bound to exercise.

Great reliance was placed on the argument upon the case of *Weston* v. *New York Elevated Railroad Company* (73 N. Y. 595), but we think that case does not control this one. In the *Weston Case* the plaintiff sustained injury · by falling upon an uncovered platform between a waiting-room and the defendant's cars, and over which platform it was necessary to pass to reach the cars, and which platform the defendant had negligently suffered to become covered with snow and ice, rendering passage over it insecure and dangerous. The evidence showed that during the day, and before the accident

happened, it had snowed, and the snow had been but partially removed from the platform. The plaintiff, while proceeding with caution, lost his footing, fell and was injured. The evidence also showed that other passengers, at about the same time, slipped upon the platform. There was no difficulty in making the platform safe, and the accident happened in the day-time. A verdict for the plaintiff was upheld in the court below and sustained in this court. The court had charged that the defendant was bound to be on the alert during cold weather and to see whether there was ice upon the platform, and to make it safe by putting sand or ashes upon it, or in some other way. This court held that that was not too stringent a rule. This case, we think, materially differs from that one. Here there was a continuous storm of sleet and snow from about twelve to four o'clock, and within two or three hours after the storm ceased, and in the very early morning, the accident occurred. The staircase was covered and the roof projected a foot on each side of it. There were rubber tips on each step, and a hand-rail on either side to aid passengers in going up and down the stairs. Under such circumstances the duty, even of alertness on the part of the defendant, was not omitted by a failure to render the stairs less slippery at such a time in the night and within the period named.

We think the motion for a nonsuit should have been granted. Again, the learned judge in his charge to the jury fell into error when he stated the obligation of the defendant upon the facts of this case. Under the cases above cited it was error to instruct the jury that it was the legal duty of the defendant to use all human care, caution and skill to make the ingress and egress to the defendant's station safe. This statement of the law was not in any manner explained or taken back. He also stated that the defendant "was required to use all the skill, all the diligence and all the care that the most cautious human being would use if he were looking after the protection of his own life and health." Upon exception being taken to that remark he altered it by saying "a very cautious" instead of "the most cautious" human being. The charge in both

forms was erroneous under the authorities already cited.    We think he also erred in his charge with reference to the condition of the stairs when he said : " If you come to the conclusion that they were slippery at that time, and that means might have been taken to prevent their being so, and that by reason of their slipperiness the plaintiff fell as has been stated, then so far as this issue goes the jury would be justified in finding for the plaintiff."    This charge practically made the company liable for the slipperiness of the steps, if by the exercise of the greatest care and skill which human foresight could think of such condition could have been prevented.    Of course such condition could have been prevented by stationing men at each stairway constantly engaged sweeping and cleaning the steps ; or if one man were not enough to do it, then, under this ruling, others should have been employed.    And, under this charge, if the storm were so severe as to require it one man on each step should have been employed.

No such rigorous rule exists in our judgment.

These views lead to a reversal of the judgment, and to the granting of a new trial, with costs to abide the event.

All concur, except DANFORTH, J., not voting.

Judgment reversed.