This is a suit by Mrs. Louise L. Creech and her husband C. W. Creech, to recover damages sustained by Mrs. Creech and expenses incurred by Mr. Creech, as a result of a fall sustained by Mrs. Creech at the corner of Travis and McNeil Streets in the City of Shreveport, Louisiana, at 7:15 a.m. on February 1, 1949 as she was in the process of alighting from a trolley car owned and operated by the defendant company.
The petition sets forth that when the trolley reached Travis and McNeil Streets and stopped for the discharge of passengers, Mrs. Creech stepped down onto the first step of the trolley and "as she stepped off the first step toward the ground, her left foot slipped, throwing her forward onto the concrete sidewalk;" that the cause of her fall was the presence of snow and ice *Page 296 
on the first step of the trolley, which had become hardened and slippery; that she was not warned of the slippery condition of the step nor had the defendant company taken the precaution of sprinkling salt on the icy step or made any effort to remove the ice. In conclusion, plaintiffs pleaded the doctrine of res ipsa loquitur.
The answer denied that defendant was guilty of any of the alleged acts of negligence or that plaintiff suffered any injury or damage and set forth in the alternative: "if the plaintiff suffered any injury or damage as alleged that the same was occasioned solely by reason of her carelessness and negligence in disembarking from the trolley while knowing the streets and sidewalks to be covered with snow and without making use of the support handrails within easy reach at all times while disembarking." In the alternative, defendant pleaded contributory negligence on the part of Mrs. Creech.
The case is before us on an appeal from a judgment of the District Court rejecting plaintiffs' demands.
The testimony in the case is conflicting both as to the presence of ice on the lower step of the trolley at the time of the accident and as to whether or not Mrs. Creech had completely alighted from the trolley prior to the beginning of her fall.
An examination of the record discloses that Mrs. Creech was a paying passenger on the trolley operated by the defendant company until she reached the corner of Travis and McNeil Streets and stepped off of defendant's trolley car. As stated, the testimony is in conflict as to whether she began slipping while her left foot was still on the lower step of the trolley or whether the fall began after both feet had been placed on the street surface.
However, we conclude that the plaintiff's fall occurred while she was still in the process of alighting from defendant's trolley and consider the question of whether the record shows the defendant to be free from negligence which might have caused the accident.
The principal negligence charged defendant in plaintiffs' petition is that there was ice on the lower step of the trolley, which Mrs. Creech saw at the time she boarded the trolley, and which several of plaintiffs' fellow passengers testified was present on the trolley steps. Several witnesses for defendant testified that they noticed no ice on the trolley steps but their testimony is negative in character and considering that the burden of proof on this point rests with the defendant carrier and that the record shows that there was snow and ice over the ground on the morning in question, we conclude that the record sustains plaintiffs on this point.
We next consider the question as to whether or not defendant's failure to keep the lower step clean of the snow dropped from the feet of the individual passengers as they boarded the car constituted actionable negligence.
A party boarding or alighting from a street car or other public conveyance is authorized to act upon the assumption that the officers of the company have taken and will take proper precaution to insure their passenger's safety. We recognize as a proper statement of the law applicable the following quotation from the case of Johnston v. City of Monroe, La. App., 147 So. 519, 520: "Plaintiff and defendant are fully in accord as to the law applicable to the duty of a carrier to provide a safe landing place for a passenger * * * a carrier is bound to exercise the strictest diligence in receiving a passenger, conveying him to his destination, and setting him down safely as the means of conveyance and the circumstances of the case will permit."
We also note the citation and quotation from the Rhode Island case of Riley v. Rhode Island Co., 29 R.I. 143, 69 A. 338, 339, 15 L.R.A., N. S., 523, 17 Ann.Cas. 50, quoted in the opinion of the learned trial Judge in the case now before us, and here reproduced: " 'On the 1st day of March, 1907, the plaintiff, in descending from a street car operated by the defendant, slipped from the step of the car and fell and was injured. A snowstorm had commenced the night before, and * * * continued during that day. The average *Page 297 
temperature until after the accident was below the freezing point. It appeared in evidence that before starting upon the trip on which the accident occurred the conductor had removed from the step such snow and ice as had accumulated there, but that, after starting from the terminus of the route, ice or snow had been deposited on the step by the feet of incoming passengers, and so remained in considerable mass when the plaintiff placed his foot upon it in alighting. He testifies that before stepping down he saw the snow and ice there, but used due care in descending.' "
The trial Judge concludes with the statement that he agrees with the last sentence of the Rhode Island Court in the Riley case, quoted as follows: " 'The prevalence of stormy weather and a freezing temperature imposes upon a passenger an extra degree of care, which he cannot expect the carrier to save him from. He must bear his share of the burden of "the inconstant year." ' "
Mrs. Creech testified that she noticed the ice on the step as she got on the trolley and she therefore knew of its presence when she began to alight. The trolley was brought to a complete stop — and remained so for some time after Mrs. Creech's fall. There was an upright handrail built into the center of the doorway by which passengers might steady themselves upon boarding or alighting from the trolley. Since plaintiff knew of the presence of the ice upon the steps, it was her duty to exercise appropriate care and make whatever use of the hand support that might be necessary to insure her reaching the street surface in safety. As noted in the District Court's opinion from the cited Rhode Island case, "the prevalence of stormy weather and a freezing temperature imposes upon a passenger an extra degree of care, which he cannot expect the carrier to save him from." To require the trolley company to keep the steps completely free of snow at all times would likely necessitate the employment of a porter or sweeper on each car and would place an injustifiable financial burden upon public transportation carriers which would be ultimately paid by its patrons.
We therefore conclude that the record establishes that the defendant was free of negligence, and further, should we grant, for the sake of argument that it was negligent not to keep the steps free of snow at all times, the fact remains that plaintiff was guilty of contributory negligence in not using the handrail until she had safely alighted.
The judgment is affirmed, with costs